UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KIBWE HOBSON )
)
)
v. ) NO. 2:04-CV-365
) (CR-2-03-CR-14)
)
UNITED STATES OF AMERICA )

**MEMORANDUM OPINION**

Proceeding *pro se,* federal inmate Kibwe Hopson has moved, under 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence, advancing two claims of ineffective assistance of counsel as grounds for relief.[1] [Doc. 1]. He has also filed a number of other motions. [Docs. 5, 6, 10, 11, 12, 14, and 16]. The United States has responded, arguing that the motion to vacate should be denied because the petitioner had waived his right to file it and also because the claims raised therein have no merit. [Doc. 3]. The petitioner has replied, objecting to the government's failure to submit an affidavit from his attorney, addressing the allegations made in the motion. [Doc. 4].

---

[1] In his motion, the petitioner's second claim is that his attorney gave him ineffective assistance by misinforming him as to the elements of the firearms charge—of which he is actually innocent. In his supporting brief, the issue is titled: "Actual Innocent Claim," the obvious inference being that it is a freestanding claim. However, since the petitioner has argued claim two both as an independent claim of actual innocence and as an instance of ineffective assistance, the former claim will be addressed within the context of the latter claim because the fate of the ineffectiveness claim depends on the viability of the claim of actual innocence and because, for reasons explained later, he has waived the innocence claim. *Tollett v. Henderson*, 411 U.S. 248, 267 (1973) (finding that a voluntary and knowing guilty plea waives all non-jurisdictional pre-plea constitutional violations); *Johnson v. United States*, 838 F.2d 201 (7th Cir. 1988) (a claim offered on collateral review is barred by a waiver of the right to appeal if the claim is one which could have been raised on appeal).

# I. STANDARD OF REVIEW

This Court must vacate and set aside a petitioner's conviction if it finds "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 434, 428 (1962)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case and his pending motions for such a hearing, to renew his motion for such a hearing, and to "Award the Writ" will be **DENIED**. [Docs. 5, 6, 10, 12, 14, and 16].

# II. PROCEDURAL BACKGROUND

In March of 2003, pursuant to a plea agreement, the petitioner pled guilty to an information charging him with one count of conspiracy to distribute and possession with

the intent to distribute at least 50 grams of cocaine base (crack), in violation of 21 U.S.C. § 846, and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). For these offenses, he received an effective 240-month sentence [180 months for the drug crime and a consecutive 60 months for the firearms offense]. He did not appeal, but instead, brought this § 2255 motion.

### III. FACTS

In the agreed factual basis, attached to the plea agreement, the petitioner stipulated to the facts which follow. [Doc. 5, Criminal Action No. 2:03-cr-14]. During a stated period of time, the petitioner conspired with three others to distribute at least 50 grams of crack cocaine and to possess with the intent to distribute that quantity of drugs. He and Amanda Whaley, his coconspirator, shared an apartment where they processed the powder cocaine into crack and stored crack cocaine, money and guns. In exchange for a portion of the crack, other individuals allowed him to use their apartments to convert large amounts of powder cocaine into crack cocaine. Among these individuals were a pregnant woman, who purchased some 17 grams of crack cocaine and allowed the petitioner to use her apartment to process some 3 kilograms of powder cocaine into crack cocaine, and two persons who were cooperating with the government and had observed the petitioner sell at least 700 grams of crack cocaine from their apartments to various customers, including another visibly-pregnant woman.

On one occasion, the petitioner sold six grams of crack cocaine to an undercover agent. The transaction was observed by other officers and audio recorded. On the day of his arrest, the petitioner and two coconspirators were videotaped leaving an apartment en route to a prearranged guns-for-drugs exchange with an undercover agent. During that transaction, which occurred within 700 feet from a school, the petitioner traded 9 grams of crack cocaine for a MAC-11 9mm semi-automatic pistol. The petitioner was arrested and seventeen grams of crack cocaine were found in a subsequent search of his vehicle. Discovered in the search of his apartment were two kilograms of powder cocaine; four ounces of crack cocaine; a large cache of money, which included a twenty dollar bill used by agents to purchase crack cocaine from the coconspirator; six handguns—of those six weapons, four were loaded, and one of those four was lying beside the money and another within arms' reach of the cocaine; a double-barreled shotgun, also loaded; and supplies for processing the cocaine powder into crack. Upon these facts, the petitioner pled guilty to the crack cocaine conspiracy and the firearms offense.

## IV.  DISCUSSION

A. <u>Waiver</u>.

The United States asserts that the petitioner has waived his right to file this motion, by virtue of the following provision in the plea agreement:

> "[T]he defendant knowingly and voluntarily agrees to waive any right he may have to file any post-conviction motions or pleadings pursuant to Title 28, United States Code, Section 2255. Specifically, the defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea(s) being offered in the instant case."

[Doc. 4, Plea Agreement at ¶ 13, Criminal Action No. 2:03-cr-14]. The plea agreement further provides that the waiver has no impact upon the petitioner's right to appeal or collaterally attack the conviction and sentence upon grounds of ineffective assistance of counsel unknown to the petitioner at the time of the plea. [*Id.*].

A provision in a plea agreement waiving the right the file a § 2255 motion is an enforceable waiver, even as to claims of ineffective assistance of counsel, so long as the waiver is done knowingly, intelligently and voluntarily. *Davila v. United States*, 258 F.3d 448, 451-52 (6th Cir. 2001); *see also Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) ("Accordingly, we hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief.").

In this case, the plea agreement waived the right to file a § 2255 motion as to all issues, save claims of ineffective assistance of counsel and prosecutorial misconduct based on grounds unknown at the time of the plea. The Court's task is to determine whether

the waiver was made knowingly and voluntarily and, if so, whether the claims of ineffective assistance and actual innocence alleged here as grounds for relief would have been known at the time he pled.

This Court scrupulously complies with Rule 11 of the Federal Rules of Criminal Procedure governing acceptance of guilty pleas and determines whether a defendant understands the nature of the charge against him, the minimum and maximum penalties he is facing, and the rights he is giving up by pleading guilty. This Court also informs a defendant of, and determines that he understands, the terms of any appellate-waiver or collateral-attack-waiver provision in the plea agreement. Fed. R. Crim. P. 11(b)(1)(N).

In the plea hearing, the Court specifically questioned the petitioner regarding the waiver provision in the plea agreement to ascertain whether he understood what he was giving up in the agreement.

THE COURT: [H]as [your attorney] explained to you the terms of the plea agreement that you and the government have entered into?

MR. HOPSON: Yes, your honor.

THE COURT: Do you understand in the plea agreement what you're agreeing to do and what the government is agreeing to do?

MR. HOPSON: Yes, your honor.

·····

THE COURT: Do you understand that the plea agreement that you've entered into contains a provision waiving your right to appeal your conviction or your sentence as long as it does not exceed the statutory maximum and limits your right to file a collateral attack on them, do you have any questions that you'd like to ask me about it?

MR. HOPSON: No, your honor.

THE COURT: Are you satisfied with your lawyer's representation of you?

MR. HOPSON: Very much so, yeah.

....

THE COURT: And will the government state its case as to these counts.

MR. SMITH: Your honor, we'd ask at this time permission to file the plea agreement. Attached to the plea agreement is an agreed factual basis that has been signed by all the parties.

THE COURT: Okay. All right. Do you agree that the statement the government just made is true and accurate?

MR. HOPSON: Yes, your honor.

....

THE COURT: Have you and your attorney talked about how the guidelines might apply to your particular case here?

MR. HOPSON: Yes, your honor.

THE COURT: And you understand that the court will not be able to determine the guideline sentence for your case until after a presentence report has been completed by the United States Probation Office and you and the government have had an opportunity to challenge the facts contained in that report?

MR. HOPSON: Yes, your honor.

[Doc. 16, Plea Hr'g Tr. at 6-7, 9, 11 in Criminal Action No. 2:03-cr-14].

The plea colloquy continued, and the petitioner indicated that he understood that the minimum mandatory penalty for the cocaine conspiracy was ten years and the maximum was life imprisonment Thereafter, the Court found that the petitioner understood his rights, was competent to plead guilty, and was doing so knowingly and voluntarily.

It is well-settled that where a court scrupulously follows the requirements of Fed. R. Crim. P. 11, "'the defendant is bound by his statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice"). Accordingly, the Court finds that the petitioner knowingly and voluntarily relinquished his right to file this motion, raising both claims of ineffective assistance of counsel, so long as the latter claims were known at the time of the plea.

Prior to taking the plea, the Court gave a detailed explanation as to the waiver and the petitioner stipulated to the facts underlying his offense. The plea transcript indicates

quite clearly that, before the petitioner entered his guilty pleas, he knew that the plea agreement negotiated by his attorney in exchange for his guilty pleas included the waivers and he also knew the facts stated in the agreed factual basis because he had concurred with those facts and signed that document. Moreover, he also knew, because he was so advised by the Court, that the minimum mandatory sentence for the drug offense was ten years; that the maximum sentence was life; and that his guidelines sentence would only be determined after his presentence investigation report was completed. Though the petitioner may be dissatisfied with his sentence, which he portrays as being five years greater than his attorney estimated, his dissatisfaction does not undo the waiver. *United States v. Melancon*, 972 F.2d 566, 567-68 (5th Cir. 1992). (Uncertainty of a sentence does not render an appellate-waiver uninformed).

The Court now finds that, under the terms of the plea agreement, the petitioner surrendered his right to file this § 2255 motion. Accordingly, the motion is barred. *Watson*, 165 F.3d at 489; *Davila*, 258 F.3d at 451. However, even if the motion were not precluded, it would be dismissed because the petitioner's claims lack merit.

**B. <u>Ineffective assistance of counsel</u>**.

A petitioner who claims that he had ineffective assistance of counsel must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Where a petitioner challenges a guilty plea, he must establish: 1) that the advice he received from

counsel in entering the plea was not within the range of competence demanded of attorneys in criminal cases and 2) that he was actually prejudiced in his defense because there is a reasonable probability that, without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). A petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006).

In judging an attorney's conduct, a court should view counsel's performance with great deference, engaging in a strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.*, at 691-92. Counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

1. *The waiver provision in the plea agreement*.

During his guilty plea and sentencing proceedings, the petitioner was represented by Clifton L. Corker, his appointed attorney. The petitioner claims that Mr. Corker gave him ineffective assistance by counseling him to enter into a plea agreement containing waiver provisions. The petitioner concedes that, during the plea colloquy, he

acknowledged his awareness of and concurrence with the provision in the plea document whereby he waived his right to file a § 2255 motion.

Nevertheless, he now insists that he answered as he did because Mr. Corker advised him that, if he did not accept the terms of the plea agreement, including the waiver provisions, this Court would not accept it; that, if the Court did not accept his plea, he would have to stand trial; and that, if he lost at trial, he would receive a life sentence. Furthermore, he maintains that he was also prompted to agree to the terms of the plea agreement by other information Mr. Corker conveyed to him, to wit, that 50 grams of cocaine base carried a ten-year sentence; that five years would be added for the firearms offense; and that, as a first offender, the judge would more than likely sentence him to a total sentence of fifteen years. Subsequently, the Court imposed a total sentence of twenty years, including fifteen years on the cocaine conviction—five years higher, according to the petitioner, than Mr. Corker had advised him.

He now charges that the waivers were obtained through his lawyer's deceit and manipulation and that he would not have pled guilty, pursuant to a plea agreement containing the waivers, had he known that the agreed factual basis would used to increase his sentence. He asks that the waivers be excised from the plea agreement and that he be permitted to re-plead under the modified plea agreement.

The petitioner has shown neither deficient performance on the part of his attorney or resulting prejudice as required by *Strickland* and *Hill*. The petitioner has offered

nothing to demonstrate that his lawyer's advice to enter into a plea agreement which waived his right to file an appeal or a § 2255 motion was objectively unreasonable. Given the range and strength of the evidence of the crack cocaine conspiracy which could have been offered at any trial and the fact that, that one coconspirator, who was cooperating with the government, had agreed to testify against the petitioner and that another had indicated that he would do the same (and, subsequently signed a plea agreement to that effect), the petitioner has supplied no reason for finding it was objectively unreasonable for Mr. Corker to recommend that he enter into a plea agreement, foregoing his rights to appeal and to collaterally challenge his conviction and sentence, but also receiving a reduction in his sentence for acceptance of responsibility, as well as the opportunity to provide substantial assistance to the government, which could have lowered his sentence further. Indeed, the record indicates that Attorney Corker's advice fell within professional standards.

By the same token, there has been no showing of prejudice as required by *Hill*: the petitioner has not shown, or even contended, that, without counsel's alleged shortcoming, he would not have plead guilty but would have insisted on standing trial. Indeed, the petitioner's position is that, absent Mr. Corker's "egregious conduct," he would have proceeded to trial on the firearms charge but would have plead guilty to the drug charge, albeit without the waiver provision in the plea agreement or the agreed factual basis. [Doc. 1, Affidavit of Kibwe Hobson at 6]. As the United States points out in its response, the petitioner, essentially, would have the Court modify the plea agreement, though it lacks the

12

authority so to do. *United States v. Wood*, 378 F.3d 342, 350 (4th Cir. 2004) ("[M]odification of the terms of a plea agreement is ... beyond the power of the district court.") (citation omitted). In any event, the Court could not and would not accept a guilty plea absent a factual basis to support it. Fed. R. Crim. P. 11(b)(3). Moreover, the government indicates that it would have been unwilling to enter into a plea agreement which did not contain the waiver provision or the agreement as to the facts supporting the pleas. No prejudice ensues from the failure to obtain that which is not available.

It appears to the Court that the petitioner has overestimated his attorney's ability to extract from the government a plea agreement which it did not intend to offer. Suffice it to say, Mr. Corker is not required to accomplish the impossible to meet his constitutional obligations—he need only provide reasonably effective assistance. *Strickland*, 466 U.S. at 687. The Court concludes that he did so, in this instance. Therefore, counsel's recommendation that the petitioner plead guilty under the terms of the agreement offered—not one scripted by the petitioner—does not constitute ineffective assistance. His claim to the contrary has no merit.

2. *Failure to explain an element of the firearms offense/actual innocence*.

In connection with the second ineffectiveness claim, the petitioner's argument is this. The petitioner questioned his counsel as to how it would be possible to convict him for possession of a firearm in furtherance of a drug trafficking offense since the weapons were found in a Gray, Tennessee apartment and since he was arrested in a different location,

13

with no firearms in his possession, and, thus, was in no "position to help forward, advance or promote any drug trafficking crime." [Doc. 1, Pet'r's Br. at 8]. Mr. Corker purportedly responded that the government did not have to prove actual possession, but could obtain a conviction on the theory of "constructive possession." According to the petitioner, counsel further advised that, unless he pled to the firearms charge, he would jeopardize his 3-level reduction for acceptance of responsibility and the firearms would be viewed as "relevant conduct" to enhance his sentence.

In a subsequently-filed motion [Doc. 10], the petitioner elaborates on his actual innocence claim by alleging that he could only be convicted of the firearms offense where the agreed factual basis clearly showed that a firearm was possessed to advance or promote the commission of the underlying offense, whereas in his case, the factual basis showed, at most, mere possession of a firearm in an area where a criminal act occurs—an insufficient basis to impose a minimum mandatory sentence.

Not only was this claim forfeited by the waiver provision in the plea agreement, but, as the United States correctly points out, citing, *inter alia*, to *Tollett v. Henderson*, 411 U.S. 248, 266-67 (1973), also by virtue of the plea of guilty itself. This is so because, as stated in *Tollett* and its line of cases, a voluntary and unconditional guilty plea generally forecloses challenges to all non-jurisdiction defects occurring prior to the plea. *See, e.g., United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002). This Court has found that the petitioner's pleas were valid, and he does not explicitly claim otherwise.

14

Moreover, even if the claim were not barred, a petitioner who is claiming actual innocence is contending that there is new evidence which shows that, due to a constitutional violation, he has been convicted of an offense of which he is innocent. *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998). The petitioner has presented no new evidence of innocence, since the "evidence" he presents in support of his claim existed at the time of his plea and, indeed, he discussed this "evidence" and the issue with his attorney during the pre-plea proceedings. [Doc. 1, Pet'r's Br. at 8].

Additionally, a petitioner claiming actual innocence must show *factual* innocence, not mere legal insufficiency. *Id.* at 624. The petitioner's claim of actual innocence is constructed on the alleged legal insufficiency of his conviction—not on his factual innocence of the charge. A petitioner asserting such a claim must further demonstrate, in view of his guilty plea, that he is also actually innocent of the counts which were dismissed as part of the plea negotiation.[2] *Id.* at 623. This petitioner cannot make such a demonstration.[3]

Furthermore, counsel's advice regarding the offense of possession of a firearm in furtherance of a drug-trafficking offense was absolutely correct. Possession of the firearm

---

[2] The eighteen-count superceding indictment alleged twelve counts against the petitioner. [Doc. 25 in Criminal Action No. 2:02-cr-83]. In exchange for his pleas of guilty to the two counts in the information, the government agreed to dismiss the superceding indictment. [Doc. 4, Plea Agreement at ¶ 13, Criminal Action No. 2:03-cr-14].

[3] It is questionable whether the claim of innocence is even cognizable, since it is not tied to a procedural default, but instead is a freestanding innocence claim. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2006) (observing, in a non-capital case, that "case law from this circuit supports the conclusion that [a freestanding claim of actual innocence] is ... not cognizable").

may be actual or constructive, exclusive or joint; *United States v. Paige*, 470 F.3d 603, 610 (6th Cir.2006), and constructive possession may be established by showing that the petitioner has dominion over the premises where the firearms are located. *United States v. Coffee,* 434 F.3d 887, 897 (6th Cir.2006). The petitioner acknowledged that he lived in the apartment were the weapons were found—a sufficient basis to show that he had dominion over the premises, thereby proving constructive possession.

A firearm which advances, promotes or facilitates a drug trafficking crime, is possessed "in furtherance" of that crime. *Paige*, 470 F.3d at 609; *United States v. Mackey,* 265 F.3d 457, 461 (6th Cir.2001). There must be a "specific nexus" between the firearm and the charged drug trafficking operation, which exists where the weapon is "strategically located as to be quickly and easily available for use during the transaction." *Id.*, at 461-62.

The agreed factual basis showed that the government was prepared to present proof that numerous firearms, some of which were loaded, two of which were lying beside the drug proceeds or near the drugs and one of which was a double-barreled shotgun; a sizable amount of powder cocaine; four ounces of crack cocaine; and a cache of money were found during a search of the apartment where the petitioner lived and out of which he dealt drugs. Though these things alone are enough to show that the guns advanced or facilitated the cocaine conspiracy, the petitioner also traded 9 grams of crack cocaine for a semi-automatic pistol. Acquiring a firearm in exchange for drugs provides a sufficient connection

between the drugs and the pistol so as to constitute possession in furtherance of the drug sale. *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005).

The fact that the firearms were found in a location some distance from the situs of the petitioner's arrest is irrelevant to, and in no way undermines, his conviction for possessing a firearm in furtherance of a drug trafficking offense. *See United States v. Johnson,* 39 Fed. Appx. 114, 2002 WL 818229 (6th Cir. Apr. 29, 2002) (affirming § 924(c)(1)(A) conviction where guns, drugs, and drug-selling apparatus were found during a search of the defendant's residence, conducted in his absence). Therefore, Attorney Corker's advice with respect to the firearms offense, specifically, his explanation of the element of possession was sound and does not give rise to a claim of ineffective assistance of counsel.

## V.  CONCLUSION

For the reasons indicated above, the petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct his sentence will be **DENIED** and this action will be **DISMISSED**.  Finally, the petitioner's motion to expand the record [Doc. 11] will be **DENIED** because the arguments presented therein are mere reiterations of previous ones and because the documents he proposes to add are already part of the Court's records—either in his or his co-defendants' criminal cases.

An appropriate order will follow.

ENTER:

s/ Leon Jordan<br>United States District Judge